UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRUCE M. BARTON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 1:06-cv-0208-TLS |
| ) | |
| ZIMMER INC., ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S MOTION TO COMPEL

Comes now the Plaintiff, by counsel, and pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, respectfully requests that this Court order Defendant to provide complete answers to Plaintiff's Interrogatories 9 and 14 and to produce the emails listed on the attached Exhibit A[1], which

---

[1] Exhibit A is a list Plaintiff prepared and provided to Defendant of those emails Plaintiff claims are not properly subject to Defendant's claim of privilege.  The first column is the Bates number affixed to each of these emails that was listed in Defendant's 37 page privilege log.  The second column is the date of each email.  The third column is an abbreviated reference to the author and one or more recipient of each email.  These abbreviation are as follows:
"Abel" is for Bob Abel, Defendant's Human Resources Director;
"O'D" is for Laura O'Donnell, Defendant's in-house and outside legal counsel;
"Marsh" is for Meghan Marsh, unidentified by Defendant;
"Richardson" is for Andrew Richardson, Defendant's former Director of Sales Training;
"Scott" is for Mike Scott, unidentified by Defendant;
"Rogers" is for Renee Rogers, Defendant's Vice President of Human Resources;
"Patrick" is for Michelle Patrick, unidentified by Defendant;
"Barth" is for Cathy K. Barth, unidentified by Defendant;
"Kline" is for Susan W. Kline, Defendant's outside legal counsel;
"Milton" is for Sherri A. Milton, Defendant's former Interim Director of Sales Training;
"Conley" is for Sheryl Conley, Defendant's upper management;
"Elliott" is for Janice D. Elliott, Defendant's employee;
"Royster" is for David N. Royster, Defendant's in-house counsel;
"Cline" is for Larry Cline, Defendant's employee;
"Saxon" is for Patti Saxon, Defendant's employee;
"Zook" is for Ric Zook, unidentified by Defendant;

emails Defendant has withheld from production by wrongfully asserting the attorney client and work product privileges[2].  In support of this motion, Plaintiff states as follows:

This is a case in which Plaintiff claims that he has been permanently injured as a result of being subjected to an ongoing age hostile work environment and an ongoing retaliatory hostile work environment which Defendant knew about and did nothing to stop.  Defendant claims, in part, that it is not liable for the hostile work environment because it took reasonable steps in good faith

---

"Silva" is for Jennifer Silva, unidentified by Defendant;
"Cave" is for Julie Cave, unidentified by Defendant;
'Coventry" is for April Coventry, unidentified by Defendant;
"Moriarty" is for Jennifer R. Moriarty, Defendant's legal dept employee;
"Miller" is for Jeffrey Miller, Defendant's former employee;
"Radford" is for Andrew Radford, Defendant's employee;
"Bowman" is for Scott Bowman, Defendant's employee;
"Hodge" is for Simon Hodge, identified by Defendant only as Wachovia;
"Gupta" is for Vic Gupta, identified by Defendant only as Wachovia;
"Wihebrink"is for Susan E. Wihebrink, Defendant's legal dept employee;
"Woodruff" is for Linda K. Woodruff, Defendant's employee;
"Burns" is for Michael S. Burns, Defendant's outside legal counsel;
"Adamson" is for Greg J. Adamson, Defendant's Director of Sales Training;
"Gosney" is for Jean E. Gosney, unidentified by Defendant;
"Jackson" is for Steven L. Jackson, Defendant's outside legal counsel;
"Whitesell" is for Michael V. Whitesell, unidentified by Defendant;
"Campbell" is for Kyle R. Campbell, Defendant's outside counsel legal staff;
"Lemert" is for Martha M. Lemert, Defendant's outside legal counsel;
"Turner" is for John H. Turner, Defendant's employee;
"McCune" is for Patrick T. McCune, unidentified by Defendant;
"Gay" is for Amberly Gay, unidentified by Defendant;
"Serafino" is for Mark Serafino, Defendant's employee;
"Dawson" is for Ian Dawson, Defendant's employee;
"Somani" is for Rohit K. Somani, Defendant's employee;
"DeBlank" is for Elena DeBlank, identified by Defendant only as AIG;
"Wonnacott" is for Terri l. Wonnacott, Defendant's outside counsel legal staff;
"Plummer" is for Dawnna Plummer, unidentified by Defendant;
"Wiard" is for Julia Wiard, unidentified by Defendant;
"Fager" is for Leanne M. Fager, Defendant's outside counsel legal staff

[2]The withheld emails listed on Plaintiff's Exhibit A which are dated April 26, 2006 through May 30, 2006 are not being sought with this Motion to Compel.

compliance with the law in response to Plaintiff's complaints which included immediately obtaining legal advice and having legal counsel participate in a thorough investigation and conclusion of each of Plaintiff's hostile environment allegations. Defendant is hiding evidence that either supports, or more likely undermines, Defendant's contention of reasonableness and good faith behind the cloak of the claimed privileges.

Defendant may avoid liability for Plaintiff's age hostile and retaliatory hostile work environment claims by merely proving that its acts or omissions were in good faith in conformity with the law. 29 C.F.R. 1626.21(a). Although not specifically stated in Defendant's Answer and Affirmative Defenses, Defendant has asserted numerous times throughout this litigation, often before the court in proceedings and in discovery responses, that Defendant acted reasonably and in good faith compliance with the law in taking prompt remedial measures in response to Plaintiff's complaints of discrimination and retaliation, which actions included Defendant's claimed thorough investigation into the matters and conclusions regarding the allegations. The evidence is clear that Defendant utilized in house and outside legal counsel to conduct the claimed investigations, information about which Defendant is refusing to disclose. In asserting its claims that it responded reasonably to Plaintiff's complaints and that it acted in good faith compliance with the law, Defendant has presented evidence that it relied on the advice of counsel.

In response to Plaintiff's Interrogatory 9, which sought detailed information about Defendant's knowledge of Plaintiff's complaints about age discriminatory conduct which Plaintiff lodged internally, formally through the EEOC, and through legal counsel correspondence, Defendant asserted the attorney-client privilege and specifically refused to provide any answers involving any communications with Defendant's legal counsel. (See attached Exhibit B, Defendant's Response to Plaintiff's First Set of Interrogatories, p. 18). However, Defendant admitted that within a week

of receipt of Plaintiff's first informal complaint on May 23, 2005, Bob Able ("Abel"), Defendant's Human Resources Director, contacted Defendant's outside legal counsel "to investigate" Plaintiff's allegations. (*Id*. at 19; Abel dep, 1-5-07, pp. 17-18). According to Abel, legal counsel was involved on an on-going basis throughout the investigation of Plaintiff's first discrimination complaint starting in late May, 2005. (Abel Dep 1-5-07, pp. 18-19, 86-88). Abel could not recall what he said in a June 14, 2005 reply email to Andy Richardson ("Richardson"), the alleged discriminator, (withheld by Defendant simply because it was copied to legal counsel) specifically related to Plaintiff's discrimination allegations. (*Id*. at 86-88). Abel further testified that he was given specific instructions from legal counsel on how to conduct the evidence gathering part of the investigation of Plaintiff's discrimination allegations. (*Id*. at 87-88). Abel also stated that 'legal' had to review the evidence he gathered before Defendant could terminate Richardson and allow Plaintiff to return to work. (*Id*. at 130-132). Abel could not identify who gave him documents during the investigation or which documents came to him during the investigation or at other times. (*Id*. at 139). Defendant has not even provided a date on which it concluded its investigation of Plaintiff's initial complaint. Rather, Defendant suggests that the investigation concluded with Richardson's termination, but then denies that Richardson was terminated for discriminating against Plaintiff because Defendant concluded that no discrimination occurred. No documentation of the Defendant's conclusion or the reasoning for the conclusion that there was no discrimination has been identified or produced by Defendant.

In response to Plaintiff's Interrogatory 14, which sought specific information about Defendant's actions in response to Plaintiff's retaliation complaints (which began with correspondence to Defendant's legal counsel on August 30, 2005), Defendant reasserted the attorney client privilege and added a claim of work product privilege in refusing to provide any answers about

the involvement of legal counsel in the investigation and conclusions. (Exh B, p. 23). Defendant avoided even answering who conducted the investigation in its written answer. (*Id*. at 23-24). It was not until Abel was deposed that Defendant first admitted that Abel again turned the investigation of Plaintiff's retaliation allegations over to legal counsel. (Abel Dep 1-5-07, pp. 27-28). Abel claims that legal counsel told him not to inform Sherri Milton, a specifically named retaliatory harasser, about Plaintiff's retaliation charge. (*Id*. at 26-27). Abel also testified that he, legal counsel and Sherri Milton, in conjunction, concluded that there was no retaliatory harassment/hostile environment. (*Id*. at 60). Abel's testimony begs the question as to what kind of "investigation" was done for Sherri Milton to be involved in a conclusion when she was supposedly not informed of the allegation.  According to Abel, there were no documents reflecting Defendant's alleged conclusion that no retaliatory harassment/hostile environment occurred or reflecting the alleged investigation itself. (*Id*. at 30, 60). Other than Abel's testimony that he "notified" legal of the retaliation charge when he received the EEOC charge in October, 2005, there is no evidence of when Defendant began or ended its claimed investigation regarding Plaintiff's retaliatory harassment/hostile environment complaints. (*Id*. at 27-28). The withheld emails appear to be the only documents which exist regarding how the investigation was conducted and why Defendant concluded that there was no discrimination or retaliation.

In addition to the unanswered interrogatory questions, Defendant has withheld from production numerous emails about the Plaintiff which were exchanged among Defendant's personnel and legal counsel or others during the period when the alleged investigations, remedial measures and conclusions were being conducted. The period during which Defendant appears to have conducted its investigations regarding Plaintiff's initial discriminatory harassment/hostile environment complaints and his retaliatory harassment/hostile environment complaints overlap and cover the

entire period from May 30, 2005 through issuance of Plaintiff's notices of right to sue on each charge on March 30, 2006. Defendant has identified the subject matter of the emails withheld during this investigative period in a manner which makes it impossible to determine whether any of them are appropriate for the privileges asserted, such as, "sales training update", "legal issues involving Plaintiff", "meeting to discuss legal strategy", "meeting to discuss legal issues regarding Plaintiff", "legal strategy", "meeting to discuss Barton EEOC charge", "Richardson investigation and legal issues regarding Plaintiff", "gathering information for settlement evaluation", "correspondence from Plaintiff's counsel", "investigation of legal issues involving Plaintiff", "Richardson termination", "sales training issues", "EEOC charge", "knee training update", and "settlement demand analysis". From the vague descriptions Defendant provided, it is impossible to tell how much of the withheld email correspondence includes information about the extent of Defendant's investigation, the information disclosed during the investigation, whether the advice of legal counsel regarding how to conduct the investigation was reasonable and was followed, who disclosed what information, what remedial measures, if any, Defendant took, the basis for Defendant's conclusion that no discriminatory and no retaliatory conduct happened or whether Defendant's conclusions were reasonable or made in good faith. Defendant has and intends to continue to present claims of reasonableness and good faith by referencing its reliance on legal counsel participation. It is impossible for Plaintiff to disprove Defendant's assertions without knowing what legal counsel did and advised Defendant to do during the investigations and conclusions.

      Defendant's assertion of the attorney-client privilege must be narrowly construed "to protect the search for truth". *Makula v. Sanwa Business Credit Corp.*, 1997 WL 460935, *2 (N.D.Ill. 1997), *quoting, United States v. Hamilton*, 19 F.3d 350, 353 (7th Cir.), cert. denied, 513 U.S. 986 (1994). Legal advice which is communicated from the attorney to the client does not, by itself, meet the

elements adopted by the Seventh Circuit as necessary for establishing the attorney-client privilege. *Johnson v. Rauland-Borg Corp.*, 961 F.Supp. 208, 211, n. 5 (N.D. Ill. 1997). In order for communication of advice from the attorney to the client to be protected by the privilege, it must reveal, directly or indirectly, "the substance of a confidential communication **by the client**.". *Chivers v. Central Noble Community Schools, et al*, No. 04 cv 394, pp. 2-3 (N.D. Ind. Aug. 4, 2005), *quoting, Johnson v. Rauland-Borg Corp.*, 961 F. Supp. 208, 210 n. 5 (N.D. Ill. 1997)(emphasis added). "Legal advice, standing alone, does not automatically receive protection." *Johnson v. Rauland-Borg Corp.*, 961 F. Supp. at 211, *quoting, Gen-Probe Inc. v. Amoco Corp.*, 1996 WL 265707, *4 n. 10 (N.D. Ill. 1996).

Defendant has not presented any evidence or argument that any of the "legal advice" suggested in Defendant's document description accompanying its privilege log included any "confidential communication" made by Defendant to any of its attorneys. Without proof that "confidential communication" by Defendant to legal counsel is included in each and every withheld email, the emails are simply not privileged. Defendant's blanket claim of attorney-client privilege for every email to, from or copied to legal counsel must be made and sustained on a document-by-document or question-by-question basis. *Chivers*, No. 04 cv 394, p. 3 (N.D. Ind. Aug. 4, 2005),, *quoting, Makula*, 1997 WL 460935, at *2 (N.D. Ill. 1997). Defendant's privilege log does not comply with that burden of proof.

However, even if the withheld emails contained "confidential communication" by Defendant to legal counsel, Defendant waived the attorney-client privilege regarding any confidential communications contained in the emails exchanged during the period from May 30, 2005 through March 30, 2006, when Defendant conducted its investigation and made conclusions regarding Plaintiff's discrimination and retaliation complaints. Defendant waived the privilege by asserting

that it reasonably and in good faith complied with the law in responding to Plaintiff's complaints by turning the investigations over to legal counsel and relying on the advice of legal counsel.

In *Johnson v. Rauland-Borg Corp.*, 961 F.Supp. 208 (N.D. Ill. 1997), the court held that Rauland-Borg waived the attorney-client privilege by placing the investigation of sexual harassment allegations at issue. *Id*. at 211. Rauland-Borg placed the harassment investigation at issue by intending to argue that it acted reasonably by employing outside attorneys to investigate the matter. (*Id*.). The court held that whether Rauland-Borg acted reasonably depended on the advice it received from its attorneys after the investigation and, by claiming that it acted reasonably, it placed the attorney's investigation and advice at issue. *Id*.; see also, *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1092-93 (D.N.J. 1996); *Fultz v. Federal Sign*, 1995 WL 76874, *3 (N.D. Ill. 1995); *Albert v. Wickes Lumber Co.*, 1995 WL 31577, * 1 (N.D. Ill. 1995).

In the matter of *Chivers v. Central Noble Community Schools, et al*, No. 04 cv 394 (N.D. Ind. Aug. 4, 2005), this court favorably cited *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1096 (D.N.J. 1006) for the proposition that defendant had waived the attorney-client privilege by fusing the roles of internal investigator and legal advisor. *Id*. at 5. In allowing the plaintiff to depose the defendant's outside legal counsel regarding the investigation and remedial measures taken in response to a Title IX sexual harassment complaint, this court stated that "[t]o prevent Plaintiffs from discovering what was done by counsel and why, would be tantamount to giving [Defendants] both the 'sword' (i.e., the argument that 'we were reasonable because we had our attorney's investigate the charge and craft a response') and the 'shield' (i.e., 'what our attorneys did, and why they did it, is privileged')." *Id*. at 6-7. Defendant cannot use the attorney-client privilege as both a sword to defend against Plaintiff's claims and as a shield to protect against disclosure of the basis for Defendant's defenses. *Id*. at 6, *citing, Chevron Corp. V. Penzoil Co.*, 974 F.2d 1156, 1162 (9th

Cir. 1992).

In addition to the waiver argument, many of the emails Defendant has refused to produce do not fall within the attorney-client privilege because they were disclosed to third-parties and individuals employed by Defendant who are not within the privilege group. The attorney client privilege only protects communications that were made **in confidence** by the client to the attorney in the attorney's professional capacity for the purpose of obtaining legal advice. *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007), *citing, United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Knowing disclosure to a third-party surrenders the attorney client privilege. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003), *citing, Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126-27 (7th Cir. 1997). The email communications Defendant disclosed to third parties which Defendant is continuing to withhold from production include those on Plaintiff's Exhibit A dated from June 22, 2006 through March 19, 2007. These emails were either written by, sent to or copied to non-management employees and others who have not been identified by Defendant as being employees of Defendant or having any agency relationship with Defendant's legal counsel.

As for those on the list who are employees of Defendant, Illinois has long used the "control group" test to determine whether an employee shares the attorney-client privilege of the employer. *Favala v. Cumberland Eng'g Co.*, 17 F.3d 987, 989 (7th Cir.1994), *citing, Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, 59 Ill.Dec. 666, 670-75, 432 N.E.2d 250, 254-59 (1982). That "control group" test basically limits the attorney-client privilege to include only employees who are in an advisory role to top management such that a decision would not normally be made without that employee's advice or opinion and which opinion in fact forms the basis of any final decision by those with actual authority. *Id*. Individuals upon whom those in the control group may rely for supplying information are **not** members of the control croup. *Consolidation Coal*, 432 N.E.2d at

258.

Search of the case law reveals no cases addressing this specific issue under the Indiana Rules of Professional Conduct or under the Federal common law.  However, the Indiana Rules of Professional Conduct regarding the issue of an organization as client and regarding contact with represented parties are substantially similar to the Illinois Rules of Professional Conduct regarding these same issues.  In addition, the Illinois "control group" test is reasonable and consistent with the Indiana Rules and with the common sense approach of the Federal common law.  In applying the "control group" test, it is clear that the employees on Plaintiff's Exhibit A are outside of that group and the attorney communications with those employees are not privileged.

Defendant has also asserted the work product privilege in refusing to produce many of the withheld emails.  The work product privilege only protects those documents prepared by an attorney or the attorney's agent to analyze and prepare its client's case.  *United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006).  The work product privilege only applies to the work of the attorney or agents of the attorney - it does **not** apply to the work of the client's agents.  *Id*.  Communications from a client which neither reflect the attorney's thinking nor are made for the purpose of eliciting professional advice or other legal assistance are not privileged work product.  *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999).

It is impossible to tell from Defendant's vague description of the emails whether any of them contain any attorney work product.  Since it is Defendant's burden to prove the existence of the privilege, and Defendant has failed to do so, the withheld emails should be produced.

Wherefore, based on the forgoing, Plaintiff respectfully requests that this court order Defendant to produce copies of the emails listed on Plaintiff's Exhibit A, except for those dated April 26, 2006 through May 30, 2006, and to provide detailed supplemental answers to Plaintiff's

interrogatories 9 and 14.

                                   **Respectfully submitted**

                                   **ROCKWELL & JANSEN, LLC**
                                   **ATTORNEYS FOR PLAINTIFF**
                                   **803 S. CALHOUN STREET, SUITE 305**
                                   **FORT WAYNE, INDIANA 46802**
                                   **TELEPHONE: (260) 420-1070**
                                   **FAX: (260) 420-1050**

                                   **BY: s/Cynthia Rockwell**
                                          **CYNTHIA ROCKWELL**
                                          **I.D. #14331-45**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 5, 2007, a copy of the foregoing Plaintiff's Motion to Compel was electronically filed. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        Steven L. Jackson, Esq.
        Martha M. Lemert, Esq.
        BAKER & DANIELS LLP
        111 E Wayne Street
        Fort Wayne IN  46802

                **s/Cynthia Rockwell**
                **CYNTHIA ROCKWELL**