UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BRUCE M. BARTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:06-cv-0208-TLS |
| | ) | |
| ZIMMER INC., | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S RESPONSE TO
# PLAINTIFF'S MOTION TO COMPEL

## I.  INTRODUCTION

Barton's Motion to Compel relies on cases that involve different facts, inappropriately conflates Zimmer's defenses to Barton's age and retaliation claims and misstates the privileges Zimmer is asserting for many of these e-mails.  Simply the facts in this case are not the same as the facts in many of the cases Barton cited, and Barton displays a fundamental misunderstanding of the nature and extent of the work product privilege Zimmer asserts for the vast majority of e-mail at issue.  For these reasons as more fully delineated below, Barton's Motion to Compel should be denied.

## II.  FACTUAL SUMMARY

In order for the court to rule on this Motion, it is necessary to outline some essential facts and chronology in this case.  On or about May 23, 2005, Barton issued a Memorandum to his boss, Director of he Sales Training Department, Andy Richardson ("Richardson") rebutting his performance and alleging at the end of the Memorandum that he felt that he was being discriminated against because of his age.  After delivery of this Memorandum,

Barton immediately took a one (1) week vacation in late May 2005.  Upon his return from vacation, Barton immediately applied for and received family medical leave for stress.  On or about late May or early June 2005, Zimmer's Director of Human Resources, Bob Abel ("Abel") with outside legal counsel, Laura O'Donnell met with Richardson to discuss the sales training department, including Barton, his performance and age allegation (Abel Depo. p. 18).  On or about July 26, 2005, Zimmer Human Resource Department received a copy Barton's Charge of Age Discrimination along with a cover letter from Cynthia Rockwell, identifying herself as Barton's counsel.  (Attached hereto as **Exhibit 1**).

On August 22, 2005 when Barton was finally released to return to work, Abel, without legal counsel present, interviewed and questions Barton at length regarding his allegation of age discrimination.  (Abel Depo. p. 19).  After interviewing Barton, Abel then interviewed several witnesses identified by Barton and the department to investigate Barton's specific allegations.  (Abel Depo. p. 18).  Outside counsel was not present during these interviews.  All of Abel's notes regarding these investigations and interviews were turned over to opposing counsel during discovery of this matter.  Abel has been deposed regarding his investigation, his notes, Zimmer's conclusions regarding the investigation and remedial actions taken by Zimmer as a result of the investigation.

After Barton's return to work in mid-September 2005, Abel, aware that Barton felt picked on, made inquiries of Barton's new supervisor, Sherri Milton ("Milton"), throughout Barton's return to work to insure that Barton's treatment was fair and appropriate. (Abel Depo. p. 25-26).  Abel's also questioned the Director of Curricula and Facility Development , Mark Serafino ("Serafino"), regarding the assignments given Barton and was satisfied that Barton was not being retaliated against. (Abel Depo. p. 28-29).  Once Barton filed a second charge of

retaliation with the EEOC, Zimmer did turn that charge over to outside counsel, Susan Kline ("Kline"), for Kline to investigate and respond to the EEOC.  However, Abel did provide and gather the factual information contained in Zimmer's Position Statement responding to the retaliation charge.  (Abel Depo. p. 147-148).

Both Abel and Milton have been deposed and questioned regarding the facts underlying Barton's claim of retaliation - the treatment of Barton upon his return to work, the delay in returning him to work, the duties and assignments he was given, the timelines for those assignments and Barton's performance of those duties.[1]  All documents and notes concerning Barton's performance upon his return to work, the duties he was assigned, and all non-privileged e-mails exchanged during that time between Barton, the Marketing Department, the Sales Training Department, Milton, and Abel have been produced.

On May 23, 2006 a Complaint in this matter was filed.

### III.  **PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED**

**A.  Barton Improperly Seeks Post-Litigation E-Mail Communications Between Zimmer And Zimmer's Counsel**

Zimmer is asserting a work product privilege for the last two hundred twelve (212) e-mails that are listed on Barton's Exhibit A as they are <u>post-litigation</u> e-mails that were created in furtherance of litigation.  Barton's Exhibit A fails to reflect the full description and range of privilege that Zimmer asserted with respect to many of these e-mails.  In the Privilege Log that Zimmer sent to Barton on August 27, 2007, it revised and updated the Privilege Log adding work product privilege to e-mails created after the end of July 2005.  A condensed version of this

---

[1] Both Abel and Milton's primary depositions lasted almost five (5) hours.  Both were also deposed during a 30(b)(6) deposition over these issues for 82 pages and 15 pages respectively.

3

privilege log is attached to this Response as **Exhibit 2**.[2]  On or about July 26, 2005, Zimmer received, not only Barton's charge of age discrimination but also a cover letter from Barton's counsel identifying herself as Barton's counsel and demanding that Zimmer cease and desist discriminating against him.  See **Exhibit 1.**  From the end of July forward Zimmer reasonably anticipated litigation in this matter.  Of the three hundred eight (308) e-mails that Barton is contesting only five (5) predate July 26, 2005.  Indeed, two hundred twelve (212) are post-complaint - when actual litigation was not merely anticipated, it was upon us.

**B.        Barton's Argument Misunderstands The Scope of Work Product Privilege**

Rule 26(B)(3) makes it clear that work product includes documents "prepared in anticipation of litigation or for trial <u>by</u> or <u>for</u> another party or <u>by</u> or <u>for</u> that other party's <u>representative</u> (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)." (Emphasis added).  In other words, work product is not limited to documents created by outside counsel and can and often does include documents created by employees or other agents of the corporate employer whether those employees are in a control group or not.  See *U.S. v. Chevron Texaco Corp.,* 241 F. Supp. 2d 1065, 1081 (N.D. Cal. 2002).  All work product (i.e., documents created in preparation or anticipation of litigation) are afforded some protection.  The purpose of work product is to "establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary."  This privilege may be invoked by either the client or attorney.  *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006).  Those documents that reflect the thought processes and strategies of attorneys are deemed to be core work product that are "out of bounds" from discovery.  *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006).  Even work product that is not reflective of the thought

---

[2] The alphanumeric number and the bcc columns were hidden in order to print the log.  Should the Court wish to see these columns, Zimmer can produce an electronic copy.

4

process of attorneys is only discoverable upon "a showing that the party seeking discovery has substantial need of materials in the preparation of the party's case, and that the party is unable to without undue hardship to obtain substantially equivalent materials by other means." *Id,*. *quoting Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947).

**C.    Barton Makes No Showing Of Substantial Need**

There has been no showing by Plaintiff of a substantial need for the two hundred twelve (212) e-mails that they are seeking that post-date the Complaint in this matter. The only justification identified in the 37.1 conference with Barton's counsel is that she believes there would be evidence of witness intimidation and threats of coercion in e-mails regarding the deposition of several witnesses who were deposed earlier in this case. However, this Court already addressed the allegation of witness intimidation and coercion and found it to have no merit. (S*ee Docket Entry 19*). Barton's motion is nothing more than a collateral attack on Judge Springman's previous order. Further, none of the witnesses during their depositions identified any threats made by Zimmer, nor did they indicate any fear for their jobs as a result of their testifying[3]  Thus, Barton does not need the e-mails - he has already deposed the witnesses.

Now, over a year later, Barton seeks to go on a "fishing expedition" through Zimmer's work product communication looking for evidence he was unable to establish during the depositions of these witnesses. Further, because Barton's counsel had full opportunity to question the witnesses in deposition, she cannot prove that Barton has been unable to access information regarding witness intimidation or coercion by any other means.

---

[3] Q: Are you concerned about your employment at Zimmer by virtue of having to answer my questions today?
   A:  No.  (Cline deposition page 9, line 15-17)
   Q: And you said you're a little nervous. Are you afraid for your employment at Zimmer?
   A:  No.  (Miller Deposition, p. 5, line 7-9).
   See also Testimony of Saxon, pp. 53-55.

5

**D.      Barton Misunderstands The Scope of Attorney-Client Privilege**

Barton is incorrect in the contention that the attorney-client privilege only attaches to e-mails by and between outside counsel and high-level officials within Zimmer (Barton's Motion to Compel at pp. 9-10).  The attorney-client privilege affords confidentiality in communications among clients, their attorneys and agents of both for purposes of seeking and rendering an opinion on law or legal services or assistance in some legal proceedings so long as communications are intended to be and, in fact, kept confidential.  *Long v. Anderson University*, 204 F.R.D. 129 (S.D. Ind. 2001).  The *Upjohn* court, recognized that limiting the attorney-client privilege to a control group is not appropriate since it "frustrates the very purpose of the privilege by discouraging communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation."  *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981).  In particular, recent cases have recognized that the attorney-client privilege can attach to communications even if non-management employees are present during that communication or copied on the communication.  *See e.g., Estes v. Health Ventures of Southern Illinois*, 2006 WL 3196834, *2 (S.D. Ill.) (presence of lower-level employee did not destroy the privilege).  In another recent case, involving the interpretation of California privilege laws, the court applied attorney client privilege protection to internal communications between the corporation's employees that either transmitted or discussed legal advice that the corporation had received for purposes of defending or settling the lawsuit in question.  *Zurich American Insurance Co. v. Superior Court* 155 Cal. App. 4th 1485 (Cal. App. 2007).  This case relied heavily on the *Upjohn* case and found that in order for corporations to implement legal advice, the advice must be communicated within the organization and others who reasonably need to know the communication in order to act for the organization.  *Id*. at 1498.  To the extent some of

6

these e-mail communications Barton is seeking to compel are attorney-client privileged, they are protected under that as well as the work product doctrine.

### E. E-Mails Regarding Outside Counsel's Investigation of Barton's Retaliation Charge Are Not Discoverable

Barton's next contends that he is entitled to any e-mails or communications involving outside counsel's investigation of Barton's subsequent charge of retaliation filed on October 28, 2005.[4] Such e-mails and communications are not subject to disclosure because they are protected by both work product and, in some instances, attorney-client privilege. Zimmer has not waived these privileges by the assertion of a defense that puts outside counsel's investigation into the retaliation charge at issue. Zimmer concedes that once it received the second charge of retaliation, it turned that charge over to outside counsel and asked outside counsel to respond to it. As part of that response, outside counsel did make inquires and got information to prepare Zimmer's Position Statement to the EEOC. All of that is work product. *Gagnon v. Sprint*, 284 F.3d 839, 856 (8th Cir. 2002) *cert denied, 537 U.S. 1001, 1014*. (Upholding the District Court's issuance of a protective order protecting the company's investigation of retaliation as work product.)

Barton, in his Motion to Compel improperly conflates the age discrimination claim and the retaliation claim and the defenses to those claims. Zimmer has not asserted and will not assert a *Ellerth/Faragher* defense to the retaliation claim. In other words, Zimmer is not claiming that it reasonably investigated and took prompt remedial action in response to the

---

[4] It should also be noted that several of the e-mail Barton is seeking involving Kline are described as settlement analysis in relation to the EEOC settlement discussions that took place. These e-mail start in late February and run through late March 2006. Since Kline filed Zimmer's Position Statement on February 6, 2006, her investigation would have been completed by then. How such e-mails would have anything to do with the actual retaliation investigation is not explained or justified by Barton's counsel. Zimmer contends that such information is certainly work product and/or attorney-client privileged, and is confidential pursuant to the confidentiality of mediation and communications in preparations thereof.

7

second allegation of retaliation. Instead, no remedial action was necessary because there was no wrong to remedy. Zimmer denies that it retaliated against Barton in that the assignments and work duties he was given were for legitimate business reasons and not for purposes of retaliation. A mere denial of Barton's claims does not constitute a waiver of attorney-client privilege. *Schofield v. U.S. Steel Corp.*, 2005 WL 3159165 at *5 (N.D. Ind. 2005). ("The court finds the that Plaintiff, through his attorney Burmeister, merely denied allegations of inequitable conduct leveled at him by the Defendant, and denial of an allegation does not constitute waiver of the attorney-client privilege.")

Likewise, Zimmer has not asserted a defense that Milton did not know of any protected conduct by Barton when she took over as Interim Director. Barton attempts to make an issue of when Milton knew of Barton's second retaliation claim. However, they ignore the fact that Milton admitted she was well aware Barton had filed at least one charge against Zimmer at the time she took over as his boss.[5] Thus, Zimmer cannot and is not alleging lack of knowledge of the supervisor of any protected conduct by Barton as a defense to the retaliation claim. Nor can they obtain otherwise privileged information merely for the purpose of impeachment or to establish credibility. *Stoner v. New York City Ballet,* 2003 WL 749893, *2 (SDNY, March 5, 2003)(" Plaintiff is free to attempt to create disputes of fact about any issue that is pertinent to the claims and defenses in this lawsuit…but he must confine himself to the use of non-privileged information to do so").

The only affirmative defense being asserted by Zimmer with respect to the retaliation claim is that the duties and assignments it gave Barton upon his return from leave

---

[5] Q: When you came in as interim director, did Bob discuss with you the fact that Bruce had filed a charge of discrimination with the EEOC?

A: Yes. (Milton Deposition, p. 59, lines 2-5).

8

were all for legitimate business reasons. (Answer at ¶ 4 of Affirmative Defenses). That defense does not invoke or have anything to do with outside counsel's subsequent investigation into a charge in order for her to prepare the Position Statement to the EEOC. The court in *Davis v. Emery Air Freight Corp.*, recently decided this very issue and found that the assertion of an affirmative defense that the corporate defendant's employment practices are "justified by legitimate non-discriminatory and non-pretextual reasons" was not a waiver of privilege putting its internal investigation of the plaintiff's complaint at issue. 212 F.R.D. 432, 434-35 (D. Maine 2003). (Distinguishing the facts of its case from *Harding v. Dana Transport Inc.* 914 F. Supp. 1084 of D.N.J. 1996).

To the extent any investigation testimony is provided, Zimmer will only rely on the investigation conducted by Abel in respect to Barton's retaliation allegations. Abel has already testified to his inquiries at length in his deposition. In short, Zimmer has no intention of calling outside counsel as a witness or presenting any evidence regarding her investigation in defense of the retaliation action. Because Zimmer is not relying on that investigation as a defense to the retaliation claim, no waiver has been effectuated.

**F.    Communications Between Zimmer's Investigator And Outside Counsel During The Age Discrimination Investigation Are Likewise Not Discoverable.**

Barton claims that all the e-mails relating to the investigation into Barton's age discrimination claim should be produced are also unavailing. In situations where a company employs outside counsel to conduct an investigation then relies on that investigation as a defense to the claim, the information obtained by the attorney during the investigation and the factual conclusions of the attorney are subject to disclosure. However, those are not the facts of this case. The following cases cited by Barton all involve situations where outside counsel was brought in to conduct a sexual harassment investigation and the company later intended to rely

9

on that investigation in its defense. See *Johnson v. Rauland-Borg Corp.*, 961 F. Supp. 208, 210 (ND Ill. 1997); *Fultz v. Federal Sign* 1995 WL 76874 (ND Ill.) *1; *Chivers v. Central Noble Community Schools*, No. 04 CV 394 (N.D. Ind. Aug. 4, 2005); *Harding v. Dana Transport Inc.*, 914 F. Supp. 1084 (D.N.J. 1996). Zimmer agrees that outside counsel's investigation may not simultaneously be a sword against plaintiff and shield by defendant asserting privilege over the investigation.

Here, outside counsel *did not* take on the role of internal investigator of Barton's age discrimination claim. Outside legal counsel, Laura O'Donnell did sit in on an initial meeting with the director of the department, Barton's supervisor, Andy Richardson, in late May or early June 2005 before any age discrimination charge was filed to discuss and give advice regarding the sales training department as well as Barton. During this meeting, confidential information was shared with outside counsel and legal advice given. Such communications are privileged.

In a very similar case, *Stoner v. New York City Ballet Company*, plaintiff sought not only the information regarding the investigation of his complaint but the consultations that took place the employer and his attorneys about these matters. 2003 WL 749893 *1 (S.D.N.Y., March 5, 2003). The court disagreed. In *Stoner*, the court found that plaintiff had full access to the investigation into Plaintiff's claims as well as to the information concerning the discipline of the alleged harasser. *Id.* at *2. The court stated that "plaintiff errs when he assumes that a party's allusion to investigations or disciplinary actions that it undertook triggers discovery not only of those actions, but also of any advice that the party received from its attorney about its conduct. That is simply not the case. Indeed, if it were, the privilege would be unavailable in virtually any case in which a party discussed its options with an attorney." *Id*. The *Stoner* court

10

likewise distinguished the facts of this case in the *Harding v. Dana Transport* case in rendering its decision. *Id.*

The only information Zimmer had at the time O'Donnell met with Abel and Richardson of discrimination was Barton's vague allegation that at the end of a rebuttal memorandum he created in late May 2005 whereby he alleged he was being discriminated against because of his age. Zimmer had no specific information from Barton in order to properly investigate Barton's allegations at that time. Once Barton returned from the leave a absence that he took on August 22, 2005, Abel (not outside counsel) investigated Barton's claim. Abel interviewed Barton at length on August 22, 2005 and then proceeded to interview several other witnesses identified by Barton. All notes and information concerning Abel's investigation of Barton's claim have been produced. Abel has been deposed at length over his investigation, his notes, the conclusions Zimmer drew from the investigation and the remedial action Zimmer took.

The Court here must distinguish between the appropriateness of Abel's investigation into the age discriminations claim and the remedial action taken at the conclusion of that investigation and any advice or guidance sought and received by Abel from outside legal counsel during this time frame. A very similar situation existed and was addressed by the court in *Pray v. New York City Ballet Company*, 1998 WL 558796 (S.D.N.Y.) In *Pray*, the court prohibited the turning over of initial and concluding communications between defendant and counsel finding:

> "If a defendant had urged that it should be held free from liability simply because it sought and relied on the advice of counsel, the Magistrate Judge's position that defendant had waived the right to Withhold the initial exchange of communication between counsel and defendant would be correct. That however does not appear to be the defendant's posture. Instead defendant asserts that on the advice of counsel, it investigated plaintiff's complaint. As I understand it, plaintiffs were given access to every aspect of the

11

> investigation. Nothing was withheld. The issue is then is not the sufficiency of the advice given or followed, but whether the investigations were an appropriate and sufficient response to the sexual harassment complaints. Plaintiffs have all the facts involved in that regard and can contest the defendant's assertion that its response was sufficient."
>
> Once an employer is made aware that its employees are being subject to sexual harassment, it is under an obligation to take reasonable steps to remedy it ...., and whether the employer's responsibility for remediation has been fulfilled is determined by the facts in each case. ... In short, we look to what the defendant in this instance did. In that regard, defendant is not seeking to withhold the nature, scope and content of the investigation undertaken. Indeed, defendant is asserting that it took good faith remedial action in response to the complaint, and it urges that it is not liable not because it took action per se but because the specific responsive step taken addressed the problem. Based on this scenario which I believe is an accurate assessment of the issue, it is difficult for me to understand what plaintiffs hope to gain by having access to defendant's communication with it's counsel.

*Id*. at *2 and 3. In short, what is at issue is the age discrimination investigation - the sufficiency of Abel's actions, questions, and Zimmer's conclusions and responses to the information obtained in the investigation. Whether or not Abel or Zimmer followed advice of counsel is beside the point. What is at issue is the reasonableness and adequacy of Abel's actions in conducting the investigation, not the reasonableness and adequacy of outside counsel's advice during that time frame.

### IV. IMPORTANT POLICY CONSIDERATION REQUIRED DENIAL OF BARTON'S MOTION

There are important policy considerations to take into account before ordering the wholesale turning over any communications between outside counsel and an internal human resources investigator during the pendancy of an human resources investigation. First, ruling that such consultations are subject to disclosure would have the effect of "chilling" human resource professionals from reaching out to outside counsel during such investigations. This

12

would result in human resource representatives having to operate in a "vacuum" and being guarded in its communications with outside counsel during this process.  Second, the entire purpose of "prompt remedial action" embodied in the *Ellerth/Faragher* defense would be devastated.  Employers could not candidly reach out to outside counsel if every e-mail would be subject to after the fact inspection by opposing counsel.  Production of counsel e-mail would result in less effective and appropriate investigations and undermine the very goal of Title VII in having employers identify and correct workplace discrimination.[6]

## V.     CONCLUSION

For all the foregoing reasons, Barton's Motion to Compel should be denied.

*[Remainder of Page Intentionally Left Blank]*

---

[6] Barton's counsel also makes the inappropriate conclusion that all of the communications between outside counsel and the client from June to September 2005 have to do with Abel's age investigation.  This is not accurate.  Clearly for all but the first five e-mails, Zimmer was on notice that litigation was anticipated and likely.  Because of this, some of these communications involved work product unrelated to Abel's age investigation.

Respectfully submitted,

*/s/ Martha M. Lemert*
Steven L. Jackson (Atty. 4861-02#)
Martha M. Lemert (Atty. #20961-02)
BAKER & DANIELS LLP
111 East Wayne Street, Suite 800
Fort Wayne, IN  46802-2603
Tele:  (260) 424-8000
Fax:   (260) 460-1700

ATTORNEYS FOR DEFENDANT

### CERTIFICATE OF SERVICE

This is to certify that the undersigned has, on the 15th day of November, 2007, served the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL** in the above entitled action upon all parties to this cause via first class mail or via the Court's electronic filing system.

Cynthia Rockwell
Rockwell & Jansen LLC
803 S. Calhoun Street
Courtside Building, Suite 305
Fort Wayne, IN  46802

BAKER & DANIELS LLP

*/s/ Martha M. Lemert*

14