**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **BRUCE M. BARTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO.  1: 06-CV-208** |
| | ) | |
| **ZIMMER INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter is before the Court on the Motion to Compel filed by Plaintiff Bruce Barton on November 5, 2007 (Docket # 106), requesting that the Court order Defendant Zimmer, Inc. ("Zimmer"), to provide complete answers to Interrogatory Nos. 9 and 14 from Barton's First Set of Interrogatories and to produce 308 e-mails that Zimmer withheld from production by asserting the attorney-client and work-product privileges. (Mot. to Compel 1-2, Ex. A, Ex. B.)  Zimmer filed a response on November 15, 2007 (Docket # 107), and Barton filed a reply on November 26, 2007 (Docket # 108).  In addition, with leave of the Court, Barton filed a sur-reply on November 28, 2007. (Docket # 112-14.)  A hearing on the motion was held on December 5, 2007. (Docket # 115.)  Following the hearing, an extensive *in camera* inspection of the 308 e-mails was conducted.

For the following reasons, Barton's motion to compel will be GRANTED IN PART and DENIED IN PART.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In this suit, Barton alleges that Zimmer, his former employer, violated the Family and

Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2654, *et. seq*., and the Age Discrimination in

Employment Act (ADEA), 29 U.S.C. § 621, *et. seq*., by creating hostile working conditions for

him as a result of his age and by retaliating against him when he complained of the alleged

conditions. (Compl. ¶¶ 1, 7,  26.)  On July 9, 2007, a scheduling conference was conducted at

which the following deadlines were set: November 16, 2007, for discovery; March 3, 2008, for

dispositive motions; June 2, 2008, for final pretrial conference; and June 16, 2008, for trial.

(Docket # 99.)

On November 5, 2007, Barton filed the instant motion to compel with respect to

Zimmer's Response to Barton's First Set of Interrogatories. (Docket # 106.)  In his motion,

Barton requests that the Court order Zimmer to provide complete answers to Barton's

Interrogatory Nos. 9 and 14 and to produce certain e-mails that Zimmer withheld from

production by asserting the attorney-client and work-product privileges.[1] (Mot. to Compel 1-2,

---

[1] Interrogatory No. 9 states:

Please provide the following information regarding Zimmer's knowledge, prior to August 22, 2005, regarding Plaintiff's complaint that he was being discriminated against on the basis of his age by Andy Richardson:

    a.       The name, position and last known address of all persons employed by Zimmer who had any such knowledge before August 22, 2005;

    b.       The manner in which each such person obtained such knowledge;

    c.       Whether and how each such person had knowledge of the written memo Plaintiff sent to Andy Richardson, produced by Zimmer as Bates numbers 179-181;

    d.       Whether and how each person had knowledge of the July 20, 2005 letter to Renee Richards regarding Plaintiff's filing of an EEOC charge;

    e.       Whether and how each such person had knowledge of the EEOC charge Plaintiff filed in July 2005;

    f.       Description of all actions taken by each such person prior to August 22, 2006, upon receiving knowledge of Plaintiff's age discrimination complaints; and

    g.       Identity and current location of all documents related to or concerning each such

2

Ex. A, Ex. B.

## III.  THE PARTIES' ARGUMENTS

Barton first argues that Zimmer's assertion of the attorney-client privilege and the work-product doctrine with respect to Interrogatory Nos. 9 and 14 is insufficient, contending that Zimmer waived the privileges when its legal counsel investigated Barton's allegations of age discrimination and retaliation. (Pl.'s Mot. to Compel 4-5.)  Furthermore, with respect to its request for the e-mails, Barton states that Zimmer "has and intends to continue to present claims of reasonableness and good faith by referencing its reliance on legal counsel participation" and thus waived its attorney-client privilege, explaining that "[i]t is impossible for [Barton] to disprove [Zimmer's] assertions without knowing what legal counsel did and advised [Zimmer] to do during the investigations and conclusions." (Pl.'s Mot. to Compel 6.)  In addition, Barton argues that many of the e-mails are not protected by the privilege because they were disclosed to "third-parties and [Zimmer employees] who are not within the privilege group" and thus were

---

person's knowledge of Plaintiff's age discrimination complaints.

(Mot. to Compel Ex. B.)  In addition, Interrogatory No. 14 states:

> Identify all actions Zimmer took in response to Plaintiff's complaints and formal EEOC charge that he was being retaliated against after his return to work in September 2005, for having complained about age discrimination, specifically including the following information:
>
> a.   Identity and position of every person who took any action;
> b.   Specific action each such person took;
> c.   When each action was taken;
> d.   Reason each action was taken;
> e.   Conclusions reached or other results of the actions Zimmer took regarding Plaintiff's retaliation complaints and formal charge; and
> f.   Identity and current location of all documents which reflect or were a part of the actions, conclusions and/or results identified in response to this interrogatory.

(Mot. to Compel Ex. B.)

not made "in confidence by the client to the attorney." (Pl.'s Mot. to Compel 9 (emphasis in original omitted).)

Barton further contends that Zimmer has not met its burden with the assertion of the work-product privilege, stating that "[i]t is impossible to tell from [Zimmer's] vague description of the emails whether any of them contain any work product." (Pl.'s Mot. to Compel 10.) Finally, Barton alleges that even if the withheld information is work product, the privilege must be set aside because Barton has a "substantial need" for the e-mails. (Reply in Supp. of Pl.'s Mot. to Compel ("Reply Br.") 8-10.)

In response, Zimmer asserts that 212 of the 308 requested e-mails are protected under the work-product privilege because they were created *after* Zimmer received Barton's charge of age discrimination from the EEOC and a letter from Barton's counsel, and thus "were created in furtherance of litigation." (Def.'s Resp. to Pl.'s Mot. to Compel ("Resp. Br.") 3-4.)  It argues that Barton merely seeks to go on a "fishing expedition," stating that he has not established a "substantial need" for the documents. (Resp. Br. 5.)  Zimmer further disputes Barton's contention that the attorney-client privilege only attaches to e-mails by and between outside counsel and a "control group" at Zimmer, emphasizing that "the attorney-client privilege can attach to communications even if non-management employees are present during that communication or copied on the communication." (Resp. Br. 6.)

In addition, Zimmer disagrees with Barton's contention that it has waived the work-product and attorney-client privileges, stating that though it did indeed turn the retaliation charge over to outside counsel and asked counsel how to respond to it, it "has not asserted and will not

assert a[n] *Ellerth/Faragher* defense to the retaliation claim."[2] (Resp. Br. 7-9); *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)[3].  With respect to Barton's age discrimination claim, Zimmer argues that its outside counsel did *not* take on the role of internal investigator and, consequently, that any communications by and between outside counsel and Zimmer in that respect are privileged. (Resp. Br. 10.)

At the December 5, 2007, hearing on the motion to compel, Barton's counsel acknowledged that in contrast to her statement in footnote 2 of the motion, Barton *is* seeking to compel the disclosure of the six e-mails dated April 26, 2006, through May 30, 2006, listed on Ex. A to the motion. (*See* Pl.'s Mot. to Compel 2 n.2; Docket # 115.)  Consequently, after the hearing, Zimmer revised its Privilege Log to include these six e-mails. (Docket # 115.) Moreover, in an effort to better support its assertion of privilege and that it had not waived any privilege, Zimmer created an appendix to the Privilege Log that explains the job title of the individuals sending and receiving the e-mails and how certain persons were connected to the subject matter of the communication. (Docket # 115.)

## IV.  LEGAL STANDARDS

### A.  General Principles

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged

---

[2] Zimmer states that it will only rely on the investigation conducted by Robert Abel, Zimmer's Director of Human Resources, in respect to Barton's retaliation allegations. (Resp. Br. 7-9.)

[3] "In other words, Zimmer is not claiming that [as in *Ellerth*, 524 U.S. at 765] it reasonably investigated and took prompt remedial action in response to the second allegation of retaliation." (Resp. Br. 8.)  Rather, it contends that "no remedial action was necessary because there was no wrong to remedy" and that a "mere denial of Barton's claims does not constitute a waiver of attorney-client privilege." (Resp. Br. 8.)

matter that is relevant to any party's claim or defense . . . ."  Relevant information need not be admissible at trial so long as the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. Daimler Chrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351(1978)).

There are two well-known exceptions to the liberal discovery rules that are relevant to this discovery dispute: the attorney-client privilege and the work-product doctrine. *Coachmen Indus. Inc. v. Kemlite*, No. 3:06-CV-160 CAN, 2007 WL 3256654, at *2 (N.D. Ind. Nov. 2, 2007) (citing *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999)).  These privileges will each be discussed in turn.

## B.  Attorney-Client Privilege[4]

"The attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity for the purpose of obtaining legal advice." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) (citing *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)).  More particularly, the elements of the attorney-client privilege are: "(1) where legal advice was sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8)

---

[4] Because the plaintiff's claims arise under federal law, the federal common law of privilege applies. Fed. R. Evid. 501.

except the protection may be waived." *Long v. Anderson Univ.*, 204 F.R.D. 129, 134 (S.D. Ind. 2001) (citing *Evans*, 113 F.3d at 1461).  Thus, "communications made in the routine course of business, such as transmittal letters or acknowledgment of receipt letters, which disclose no privileged matters and which are devoid of legal advice or requests for such advice are not protected." *Dometic Sales Corp. v. Intertherm, Inc.*, No. S87-81, 1988 WL 492342, at *10 (N.D. Ind. March 28, 1988).  "Only where the document or communication is primarily concerned with legal assistance does it come within the attorney-client privilege.  Purely technical information is otherwise discoverable." *Id.*

Likewise, communications made by a lawyer will be protected if they either "rest on confidential information obtained from the client [or] . . . would reveal the substance of a confidential communication by the client." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (internal citation omitted); *see also United States v. DeFazio*, 899 F.2d 626, 635 (7th Cir. 1990) ("Communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence."); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 414-15 (N.D. Ill. 2006); *Midwestern Univ. v. HBO & Co.,* No. 96 C 2826, 1999 WL 32928, at *2 (N.D. Ill. Jan. 4, 1999) ("When a lawyer gives legal advice to the client it does not automatically trigger the attorney-client privilege.  Rather, statements which would reveal the substance of the confidential communication are protected."); *Pippenger v. Gruppe*, 883 F. Supp. 1201, 1210 (S.D. Ind. 1994) (collecting cases).  Thus, "[w]hen information is transmitted to an attorney with the intent that the information will be transmitted to a third party . . ., such information is not confidential." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).

The party seeking to invoke the attorney-client privilege bears the burden of establishing all of the privilege's essential elements. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). "The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." *Id.* (internal quotation marks and citation omitted); *see also Avery Dennison Corp. v. UCB Films PLC*, No. 95 C 6351, 1998 WL 703647, at *2 (N.D. Ill. 1998); *Ziemack v. Cent. Corp.*, No. 92 C 3551, 1995 WL 314526, at *3 (N.D. Ill. 1995). Moreover, "[t]he scope of the privilege should be strictly confined within the narrowest possible limits." *Lawless*, 709 F.2d at 487 (internal quotation marks and citation omitted); *Matter of Walsh*, 623 F.2d 489, 493 (7th Cir. 1980) ("As it is in derogation of the search for truth, the privilege must not be lightly created nor expansively construed.").

Analyzing the applicability of the attorney-client privilege becomes even more challenging in the context of a corporate client because in order to establish the privilege, the proponent must show that each individual who participated in the communication is "sufficiently identified with the corporation." *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 491-92 (7th Cir. 1970), *aff'd*, 400 U.S. 348 (1971); *see also Muro v. Target Corp.*, 243 F.R.D. 301, 305-06 (N.D. Ill. 2007). This so-called "subject matter" test asks whether the communication was made at the instance of the employee's superior and whether the subject matter of the communication, upon which the attorney's advice is sought by the corporation and contained within the communication, was within the scope of the employee's duties.[5] *Harper & Row*

---

[5] In her motion, Barton urges use of the "control group test" (Pl.'s Mot. to Compel 9-10); however, the control group test has been rejected by the United States Supreme Court. *See Upjohn Co. v. United States,* 449 U.S. 383, 394 (1981) (rejecting the 'control group' test for the sphere of privilege, which would have confined the sphere to a small group of corporate officers). Rather, the attorney-client privilege extends to any employee who communicates with counsel at the direction of his superiors, regarding matters within the scope of his duties. *See Harper & Row Publishers*, 423 F.2d at 491-92; *Muro v. Target Corp*, No. 94 C 6267, 2006 WL 3422181, at *2

*Publishers*, 423 F.2d at 491-92; *Muro v. Target Corp.*, No. 94 C 6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006); *see also In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1995 WL 557412, at *1 (N.D. Ill. Sept. 19, 1995); *Sylgab Steel & Wire Corp v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 456-57 (N.D. Ill. 1974) ("It is well settled that the dissemination of a communication between a corporation's lawyer and an employee of that corporation to those employees directly concerned with such matters does not waive the attorney-client privilege."), *aff'd*, 534 F.2d 330 (7th Cir. 1976).

Nevertheless, "[s]imply including an attorney in a communication will not render an otherwise discoverable document protected by the privilege." *Muro v. Target Corp.*, No. 94 C 6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006); *see Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980) ("[T]he courts will not permit the corporation to merely funnel papers through the attorney in order to assert the privilege." (citing *Radiant Burners, Inc. v. Am. Gas Assn.*, 320 F.2d 314, 324 (7th Cir. 1963))).

The attorney-client privilege, once established, can be waived if the communication is shared with any corporate employee who is not "directly concerned" with or did not have "primary responsibility" for the subject matter of the communication. *Sylgab Steel,* 62 F.R.D. at 456; *see also Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006); *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987) (stating that "[w]here the client is a corporation, the privilege is waived if the communications are disclosed to employees who did not need access to the communication").

Thus, the proponent of the privilege has the burden of demonstrating not only that the

---

(N.D. Ill. Nov. 28, 2006).

original communication was made with the expectation of confidentiality, but also that the

confidential nature of the communication was not compromised by disclosure to individuals

outside the attorney-client relationship.[6] *See Jenkins*, 487 F.3d at 490-91 ("[O]rdinarily,

statements made by a client to his attorney in the presence of a third person do not fall within the

privilege, even when the client wishes the communication to remain confidential, because the

presence of the third person is normally unnecessary for the communication between the client

and his attorney."); *see also Evans,* 113 F.3d at 1462.

E-mails, with sometimes different and multiple recipients and authors, add complexity to

the analysis of the attorney-client privilege. *See Thompson v. Chertoff*, No. 3:06-CV-004 RLM,

2007 WL 4125770, at *2 (N.D. Ind. Nov. 15, 2007).  "Email strands can span over several days,

and they may have many different recipients and authors." *Id*.  Moreover, some e-mails in which

counsel are involved may contain factual information, which is not protected by the privilege,

while others within the same strand may contain exclusively legal advice. *Id*. (citing *Muro v.*

*Target Corp*., 243 F.R.D. 301, 305 n.4 (N.D. Ill. 2007)); *see generally Upjohn*, 449 U.S. at 395-

96 ("The client cannot be compelled to answer the question 'What did you say or write to the

attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because

he incorporated a statement of such fact into his communication to his attorney."); *Pippenger*,

883 F. Supp. at 1208 ("It is beyond question that the attorney-client privilege does not preclude

the discovery of factual information.  Only the communications and advice given are privileged;

the underlying facts communicated are discoverable if they are otherwise the proper subject of

---

[6] There is however, an exception to the general rule that the presence of a third party will defeat a claim of privilege when that third party (for example, the attorney's secretary or paralegal) is present to assist the attorney in rendering legal services. *Jenkins*, 487 F.3d at 490-91.

discovery.").

Nevertheless, under *Upjohn*, 449 U.S. at 395-96, the very fact that non-privileged information was communicated to an attorney may itself be privileged, even if that underlying information remains unprotected. *See Muro v. Target Corp.*, No. 04 C 6267, 2007 WL 3254463, at *12 (N.D. Ill. Nov. 2, 2007).  As applied to e-mails, this means that even though one e-mail is not privileged, a second e-mail forwarding the prior e-mail to counsel might be privileged in its entirety. *See Muro v. Target Corp.*, No. 04 C 6267, 2007 WL 3254463, at *12 (N.D. Ill. Nov. 2, 2007.  "In this respect, the forwarded material is similar to prior conversations or documents that are quoted verbatim in a letter to a party's attorney." *Id*.

### C.  Work-Product Doctrine

The work-product doctrine is a qualified privilege and is "distinct from and broader than the attorney-client privilege." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613 (N.D. Ill. 2000) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)).  For example, the work-product doctrine extends "to protect material prepared by investigators for the lawyer." *Id*. (citing *Nobles*, 422 U.S. at 238).

Memoranda based on oral statements of witnesses are "the sort of material the draftsmen of the Rule 26 had in mind as deserving special attention." *Id.* (citing *Upjohn*, 449 U.S. at 400). "In *Upjohn*, the Court reaffirmed the strong public policy underlying the work product doctrine and emphasized that forcing an attorney to disclose notes and memos of witness oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Id*. (citing *Upjohn*, 449 U.S. at 399).

The work-product doctrine, stemming from *Hickman v. Taylor*, 329 U.S. 495 (1947), is

codified in Federal Rule of Civil Procedure 26(b)(3) as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . .  But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. . . .  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Therefore, in order to come within the qualified protection from discovery created by Rule 26(b)(3), a party claiming protection must show that the materials sought are: (1) documents and tangible things;[7] (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's representative. *Caremark,* 195 F.R.D. at 613-14 (citing 8 Wright, Miller & Marcus, *Federal Practice And Procedure*: Civil 2D § 2024 (1994)).

Nonetheless, as articulated in Rule 26(b)(3), once the qualified work-product privilege is established, it can still be overcome if the party seeking the materials shows: (1) a substantial need for the materials, and (2) an inability to obtain the substantial equivalent of the information without undue hardship. *Caremark*, 195 F.R.D. at 614.  Even upon such a showing, however, "the lawyer's mental processes are required to be protected from disclosure." *Id.*

To determine whether documents were prepared "in anticipation of litigation," a court is to ask "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Coachmen*, 2007 WL 3256654, at *2 (citing *Caremark*, 195 F.R.D. at 614); *see*

---

[7] The parties do not dispute that what Barton seeks are documents (apart from the request that Zimmer answer Interrogatory Nos. 9 and 14).

*also Binks Mfg. Co. v. Nat'l Presto Indus., Inc.,* 709 F.2d 1109, 1118-19 (7th Cir. 1983); *Logan v. Commercial Union Ins.* Co., 96 F.3d 971, 976 (7th Cir. 1996).  Therefore, work-product immunity requires at least some articulable claim likely to lead to litigation and a document which was prepared because the litigation was fairly foreseeable. *See Binks*, 709 F.2d at 1119.

"Materials or investigative reports developed in the ordinary course of business do not rise to the status of work product." *Caremark,* 195 F.R.D. at 614.  "In order to qualify as work product, the material or report must come into existence because of the litigation or some articulable claim has arisen that is likely to lead to litigation." *Id*. (citing *Binks,* 709 F.2d at 1120).  "Essentially, documents that are created in the ordinary course of business or that would have been created irrespective of litigation are not under the protection of the work product doctrine." *Id.* (citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).  On the other hand, "where a document is prepared because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection merely because it is also created in order to assist with a business decision." *Id*. (citing *Adlman*, 134 F.3d at 1202).  Materials prepared in anticipation of litigation by or for a party, by any representative of that party, are protected, regardless of whether the representative is acting for the lawyer. *Id.* at 615.  "Thus, whether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it." *Id*.

Understandably, then, "[n]ot all documents created or produced by a company can be categorized as protected by work product simply because a company's internal investigation is co-existent with a present or anticipated lawsuit that is the same subject matter of the litigation." *Id*. at 614-15.  Not only must the "primary motivating purpose behind the creation of the

document or investigative report . . . be to aid in . . . litigation in order to be deemed protected,

the document must also be of a legal nature and primarily concerned with legal assistance;

technical information is otherwise discoverable." *Id.* (quoting *Binks*, 709 F.2d at 1119; *Loctite*

*Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981) (internal citation and quotation marks

omitted)).  The work-product doctrine will generally apply with respect to an internal

investigation that is undertaken in anticipation of litigation, whether it is conducted by counsel or

by other agents of the corporation.[8] *See, e.g.*, *Peterson v. Wallace Computer Servs., Inc.*, 984 F.

Supp. 821, 824 (D. Vt. 1997) (finding that notes and memoranda from investigation undertaken

by the director of human resources and plant manager constituted work product prepared in

anticipation of litigation).

Finally, Rule 26(b)(3) divides work product into two categories: (1) "opinion" work

product, which reflects or reveals a lawyer's mental processes; and (2) "ordinary" or "fact" work

product. *Caremark*, 195 F.R.D. at 616.  "Both are generally protected and can be discovered

only in limited circumstances." *Id.* (citing *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th

Cir. 1994)).  Opinion work product, however, is even more scrupulously protected than ordinary

---

[8] In addition, work product includes "[s]ubject matter that relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved, rather than to the underlying evidence . . . ." *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D. Ill. 1990) (quoting 4 James Wm. Moore, *Moore's Federal Practice*, ¶ 26.64[1] at 26-349-350 (1989)).  Thus,

> [i]f in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery. . . .  [T]he distinction between whether defendant's 'in house' report was prepared in the ordinary course of business or was 'work product' in anticipation of litigation is an important one.  The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product. . . .  A more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business.

*Binks*, 709 F.2d at 1119 (internal citations omitted).

or fact work product, since it "represents the actual thoughts and impressions of the attorney."[9]

*Grand Jury Proceedings*, 33 F.3d at 348; *see also Caremark*, 195 F.R.D. at 616.

## V. DISCUSSION

### *A. The Attorney-Client Privilege*

1. The *In Camera* Inspection of the Documents With Respect to the Attorney-Client Privilege

Based on the Court's *in camera* inspection of the e-mails, the following documents[10] are

privileged because they involve communications made in confidence by Zimmer employees who

were "sufficiently identified" with the corporation or who were necessary for the obtaining of

legal advice, to Zimmer's outside counsel (or its secretary or paralegal) with respect to the

seeking of legal advice, *see Jenkins*, 487 F.3d at 490:[11]  6788, 6789, 8440-8441, 8442, 8348,

---

[9] The Supreme Court has declined to rule whether this immunity is absolute, and, if not, the showing required to overcome a presumption of protection, *Upjohn*, 449 U.S. at 401; the Seventh Circuit also has not ruled directly on this issue, *Logan*, 96 F.3d at 976, n.4. However, in *dicta*, the Seventh Circuit Court of Appeals indicated that, under some circumstances, opinion work product may be discoverable. *Logan*, 96 F.3d at 976 n.4. While there exists a "heightened protection afforded an attorney's mental impressions and opinion," the Seventh Circuit stopped short of stating that the protection was absolute. *Id.*  Nevertheless, at least one district court has held that "mental impressions, conclusions, opinions, or legal theories" of an attorney are "absolutely privileged." *Vardon Golf Co. v. BBMG Golf Ltd.,* 156 F.R.D. 641, 646 (N.D. Ill. 1994).  Thus, in essence, the immunity from discovery for opinion work product is absolute or nearly absolute. *See Bio-Rad Labs., Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 121 (N.D. Cal.1990).  In fact, in those circuits that do allow discovery for these type of documents, a "compelling showing" is required to produce the documents. *Id.*

[10] Each document is identified by the last four digits of its Bates number set forth on Zimmer's Privilege Log.

[11] These employees include Robert Abel, the vice president in human resources who investigated Barton's claims and terminated Andrew Richardson, Barton's supervisor; Sherri Milton, Barton's interim supervisor; Renee Rogers, the vice president in human resources who was a decisionmaker in Richardson's termination; Tom Troup, vice president of global education and communication; and David Royster, Zimmer's assistant general counsel. (*See* Zimmer Privilege Log App.)  This group also includes the following employees who communicated with outside counsel within the scope of their duties at their supervisor's direction and/or were scheduled for depositions in the matter: Cathy Barth, assistant to Abel; Larry Kline, sales training manager; Ian Dawson, director of marketing; Janice Elliott, coordinator of sales training department; Jennifer Moriarty, assistant to Royster; Andrew Radford, sales training manager; Patti Saxon, sales training manager; and Susan Wihebrinke, litigation manager for inhouse counsel. (*See* Zimmer Privilege Log App.)  The group also includes Reg Johnson, human resources information systems associate director, and John Turner, director of information technology infrastructure, who were necessary from a technological perspective for Zimmer to obtain legal advice. (*See* Zimmer Privilege Log App.)

8444, 6783- 6784, 6785-6786, 8349-8350, 8421-8422, 8438, 6787, 8351, 6776-6780, 8434-8435, 8352, 8436-8437, 6793-6795, 6797, 6802-6803, 6809, 6810, 7845, 7846-7847, 7852, 7849, 6853-6854, 7960, 8074, 8046-8047, 8199, 8259-8260, 8285, 8286-8287, 8309-8310, 7431-7432, 8312, 7471-7474, 8288-8291, 8298-8301, 8302-8306, 8292-8297, 8335, 8336, 8337-8338, 8393-8394, and 8307-8308.

The following documents are privileged because they involve communications made by outside counsel to Zimmer employees "sufficiently identified" with the corporation, which contain legal advice or that would reveal the substance of a confidential communication made by Zimmer, *see Rehling*, 207 F.3d at 1019:  6723-6724, 6725-6726, 6727-6729, 6730-6732, 6734-6735, 6736-6737, 6745-6746, 6755, 0332-0339, 6758, 6771-6772, 6773, 6774-6775, 6798-6799, 6800-6801, 6804-6807, 6808, 6811, 6812, 6813-6814, 6815, 6816, 6817-6818, 6826, 6827, 6829, 6839-6840, 6850-6851, 7158-7159, 7375-7377, 7389-7390, 7409, 7410-7411, 7412-7414, 7415-7418, 7420-7421, 7422-7424, 7428-7430, 7433-7434, 7442, 7449, 7452-7453, 7462-7465, 7466-7470, 7486-7490, 7493-7498, 7499-7504, 7516-7517, 7523-7524, 7614-7615, and 7805-7806.

Zimmer has waived the attorney-client privilege with respect to the following documents because the communication was forwarded to an individual who Zimmer failed to show needed access to the confidential information, *see Baxter*, 1987 WL 12919, at *5:  8445 as redacted, 8446-8447, 8425-8428, and 8450-8453.

The following documents are not privileged because though the communications were made by Zimmer employees to outside counsel, the employees were neither seeking legal advice

nor sharing confidential information in the communication, *see Jenkins*, 487 F.3d at 490:  6790, 7848, 7850, 8455-8456, 8395, and 7680.

The following documents are not privileged because they involve communications made by outside counsel to Zimmer employees that neither contain legal advice nor reveal the substance of a confidential communication made by Zimmer, *see Rehling*, 207 F.3d at 1019: 6733, 6743-6744, 6747, 6751, 6791-6792, 6819, 6822, 7388, 7419, 7451, 7511, 7512, 7513, 7515, 7516-7517, 7525, 7526, 7549, 7587, 8399, 8400, 7612, and 7613.

The following documents are not privileged because though they involve communications made by Zimmer employees to outside counsel, Zimmer has failed to show that the employees did so at their supervisor's direction, *see Harper & Row Publishers*, 423 F.2d at 491-92:  6741-6742 and 8459-8460.

The following documents are not privileged because they do not involve a communication between Zimmer and its attorney, *see Jenkins*, 487 F.3d at 490:  7713-7716, 8423, 8486, 8488, 8311, and 7768-7770.

The following documents are privileged because the communications involve legal advice rendered by Zimmer's outside counsel that was forwarded to Zimmer employees who needed access to the information, *see Baxter*, 1987 WL 12919, at *5:  7893-7894 and 8396-8397.

2.  Zimmer's Investigation of the Retaliation Claim Results in a Waiver of the Attorney-Client Privilege With Respect to Certain Documents

Notwithstanding the foregoing, the Court's analysis with respect to the attorney-client privilege is not yet concluded.  Barton argues that Zimmer waived the attorney-client privilege because (1) Zimmer used legal counsel to conduct the investigation of Barton's claims and (2)

Zimmer may assert as a defense, at least with respect to its age discrimination claim, that it relied upon the advice of counsel.

Indeed, a defendant may waive the attorney-client privilege if it fuses the roles of internal investigator and legal advisor, as "the plaintiffs must be permitted to probe the substance of [the defendant's] alleged investigation to determine its sufficiency." *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1090-1100 (D.N.J. 1996) (finding in a sexual discrimination case that defendant had waived the attorney-client privilege where defendant's attorney "acted as [it]s attorney as well as its investigator."). "Without having evidence of the actual content of the investigation, neither the plaintiffs nor the fact-finder at trial can discern its adequacy." *Id.*

A defendant may also waive the attorney-client privilege if it asserts its investigation as part of its defense. *Id.* In essence, "it is inconsistent for [the defendant] to invoke the *Faragher-Ellerth* defense but to retain the documents necessary to evaluate the sufficiency of its response as required by that defense." *McGrath v. Nassau County Healthcare Corp.*, 204 F.R.D. 240, 245 (E.D.N.Y. 2001); *see also Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) (holding that while an attorney's investigation would normally be protected by both the work-product and attorney-client privileges, defendants' intention to rely upon it as a defense to a discrimination claim resulted in waiver). In sum, "[c]orporate litigants hoping to counter charges of respondeat superior liability may easily avoid this result in the future either by separating the role of investigator from that of litigator, or by refraining from defending themselves on the basis of reasonable investigation." *Harding*, 914 F. Supp. at 1099.

a. Barton's Age Discrimination Claim

With respect to Barton's age discrimination claim, Zimmer adamantly disputes Barton's

contention that its outside counsel took on the role of internal investigator.  It contends that Robert Abel, Zimmer's Director of Human Resources, not outside counsel, conducted the internal investigation of Barton's age discrimination claim. (Resp. Br. 2.)

Abel admits, however, that he did indeed communicate with Zimmer's outside counsel "on an ongoing basis" concerning Barton's claim. (Abel Dep. 17, 87.)  In fact, when he received Barton's informal complaint of discrimination, the first thing Abel did was meet with outside counsel, as well as Barton's supervisor, "to evaluate the claim . . . ." (Abel Dep. 17-18.) Nonetheless, it was Abel, *not* outside counsel, who interviewed Barton at length about the claim in August 2005. (Resp. Br. 2; Abel Dep. 18.)  Moreover, Abel also interviewed several witnesses identified by Barton to investigate Barton's specific allegations. (Resp. Br. 2; Abel Dep. 18.) Outside counsel was not present during any of these interviews. (Resp. Br. 2.)  Furthermore, Barton deposed Abel regarding his investigation, his notes, Zimmer's conclusions regarding the investigation, and the remedial actions taken by Zimmer as a result of the investigation; in addition, his notes regarding the investigations and interviews were given to Barton during discovery. (Resp. Br. 2.)

Consequently, it does not appear that Zimmer is seeking to withhold "the nature, scope and content of the investigations undertaken." *Pray v. New York City Ballet Co.*, No. 96 CIV. 5723 RLC, 1998 WL 558796, at *2 (S.D.N.Y. Feb. 13, 1998).  Rather, Barton has seemingly been "given access to every aspect of the investigations.  Nothing has been withheld." *Id*. "The issue then is not the sufficiency of the advice given or followed, but whether the investigations were an appropriate and sufficient response to the [age discrimination] complaints." *Id*.

Thus, Barton has all the facts in that regard and can challenge Zimmer's assertion that its response to Barton's age discrimination claim was sufficient. *Id*.  Accordingly, there is no justification for breaching the attorney-client privilege protecting Zimmer's communications regarding the investigation of Barton's age discrimination claim.

      b.  <u>Barton's Retaliation Claim</u>

Similarly, Zimmer also disputes Barton's contention that its outside counsel took on the role of internal investigator with respect to Barton's retaliation claim.  Again, it contends that Abel, not outside counsel, investigated Barton's complaints.[12] (Resp. Br. 2.)

When Barton first informally complained of retaliation in September 2005, Abel met with Sherry Milton, Barton's new supervisor, concerning Barton's complaint and then communicated with her approximately every other week for several months regarding the issue. (Abel Dep. 25-26.)  Abel also questioned Mark Serafino, Zimmer's Director of Curricula and Facility Development, regarding the complaint. (Abel Dep. 28-29.)  There is no indication that outside counsel was present during any of these interviews.  Abel and Milton were each deposed regarding the facts underlying Barton's complaint of retaliation, and all non-privileged documents and notes associated therewith were produced to Barton during the discovery process. (Resp. Br. 3.)  Consequently, just as concluded *supra* with respect to Barton's age discrimination claim, there is no justification for breaching the attorney-client privilege protecting Zimmer's communications regarding the investigation of Barton's informal complaint of retaliation. *See Pray*, 1998 WL 558796, at *2.

---

[12] Zimmer states that it "has not asserted and will not assert a[n] *Ellerth/Faragher* defense to the retaliation claim." (Resp. Br. 7.)

Zimmer concedes, however, that once it received Barton's formal complaint of retaliation filed on October 28, 2005, with the EEOC, "it was turned over to outside legal counsel for investigation." (Def.'s Resp. to Pl.'s First Set of Interrogs. to Def. ¶ 14; Resp. Br. 7.)  Zimmer acknowledges that outside counsel did "make inquir[i]es and got information to prepare Zimmer's Position Statement to the EEOC," which was filed on February 6, 2006. (Resp. Br. 7.) As a result, Zimmer fused the roles of internal investigator and legal advisor as of October 28, 2005, with respect to Barton's retaliation claim, and thus has waived the attorney-client privilege with respect to the following e-mails dated from October 28, 2005, to February 6, 2006, that pertain to its outside counsel's investigation of Barton's retaliation claim, *see Harding*, 914 F. Supp. at 1090-1100 (emphasizing that "the plaintiffs must be permitted to probe the substance of [the defendant's] alleged investigation to determine its sufficiency"): 6791-6792, 6793-6795, 6797, 6798-6799, 6800-6801, 6802-6803, 6804-6807, 6808, 6809, 6810, and 6811.

### C.  The Work-Product Doctrine

1.  The *In Camera* Inspection of the E-mails With Respect to the Work-Product Doctrine

As to whether Zimmer prepared certain e-mails "in anticipation of litigation," Fed. R. Civ. P. 26(b)(3), Barton first complained to Zimmer that he was being discriminated against on the basis of his age on May 23, 2005, when disputing Richardson's assessment of his performance. (*See* Mot. to Compel 3-4; Resp. Br. 1.)  While litigation may have still been a remote prospect at that time, clearly litigation was reasonably foreseeable to Zimmer no later than July 26, 2005, when it received a letter from Barton's attorney raising a "serious concern" that Barton was being discriminated against due to his age and enclosing a copy of the charge of age discrimination that Barton filed with the EEOC. (*See* Resp. Br. Ex. 1.)  Thus, for purposes of

21

the work-product doctrine analysis, the Court will use July 26, 2005, as the date that Zimmer could reasonably have anticipated Barton's litigation.

After an *in camera* inspection of each e-mail, the Court concludes that all of the documents on Zimmer's Privilege Log that Zimmer asserts are privileged under the work-product doctrine do indeed constitute work product, with the exception of the following documents:

a)  8445 as redacted, 8439 as redacted, and 8455-8456, because Zimmer has failed to show that these documents were prepared in anticipation of litigation, *see Caremark,* 195 F.R.D. at 613-14;

b)  6748-6750, 6752, 6781-6782, 6761-6762, and 6763-6767, because the content of these documents was produced to Zimmer's adversary, *see Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479 (N.D. Ill. 2002) (noting that "once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears." (quoting *Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2nd Cir. 1993))); and

c)  6758, 6759, 6760, 7713-7716, 6776-6780, 6768-6770, 8434-8435, 6791-6792, 7844, and 8461-8462, because these documents were prepared in the ordinary course of business rather than in anticipation of litigation, *see Caremark,* 195 F.R.D. at 614.

2.  <u>Barton Overcomes the Work-Product Doctrine In Part</u>

Barton advances three arguments in an effort to overcome the work-product doctrine, one of which is partially successful.  As explained *supra* in Section IV.C, the work-product privilege can be overcome if Barton establishes a substantial need for the materials and an inability to

obtain the substantial equivalent of the information without undue hardship. *Id*.

First, as with the attorney-client privilege, Barton argues that the investigation of his complaints of age discrimination and retaliation were "conducted in whole or in part by [Zimmer's] outside legal counsel" and that he "needs the evidence of what [Zimmer's] outside counsel did to investigate and said to [Zimmer] that resulted in the conclusion that no remedial action was needed," because the e-mails regarding those investigations and conclusions "are the only written evidence of that process." (Reply Br. 8-9.) However, as concluded *supra* in Section V.A.2.a, Barton's assertion that the investigation of his age discrimination claim was performed by outside counsel, rather than Abel, is unpersuasive; consequently, Barton cannot establish a substantial need for the e-mails pertaining to his age discrimination claim to and from Zimmer's outside counsel.

Barton's assertion that outside counsel investigated his retaliation claim, however, faired more successfully. As articulated *supra* in Section V.A.2.b, the Court determined that Zimmer had waived the attorney-client privilege with respect to the e-mails dated October 28, 2005, to February 6, 2006, because Zimmer conceded that its outside counsel performed the investigation of Barton's formal claim of retaliation. In that same vein, the Court concludes that Barton has established a substantial need for those documents consisting of "fact work product" and has established an inability to obtain the substantial equivalent of the information through other means. *See Caremark*, 195 F.R.D. at 616. "Without having evidence of the actual content of the investigation, neither the plaintiffs nor the fact-finder at trial can discern its adequacy." *Harding*, 914 F. Supp. at 1096.

However, in that "immunity from discovery for opinion work product is absolute or near

absolute," the Court does not find that Barton has established a "compelling showing" for the documents that consist of the "mental impressions, conclusions, opinions, or legal theories" of Zimmer's outside counsel. *Caremark*, 195 F.R.D. at 616.  Therefore, Barton has overcome the work-product privilege only with respect to the following "fact work product" documents created between October 28, 2005, and February 6, 2006:  6791-6792, 6793-6795, 6796, 6797, 6808, 6809, 6810, and 6811.

In his second argument to overcome the work-product doctrine, Barton asserts that he has a "substantial need for those [e-mails] written to and from witnesses who have been deposed in this case," particularly Larry Cline, Patti Saxon, Janice Elliott, and Jeffrey Miller, whom he contends "all failed to comply with deposition subpoenas that requested each of them to produce documents of their communications with [Zimmer's] employees." (Reply Br. 9.)  Barton further explains that several witnesses that were deposed had "foggy memories" and could not recall the specific dates of their communications with Zimmer's employees or the specific information they exchanged during both pre and post-litigation communications with Zimmer's employees, yet admitted that many of the communications were done by e-mail on Zimmer's e-mail system. (Reply Br. 9.)

Barton's second argument is not only unconvincing, but it also mischaracterizes the record.  To explain, Barton fails to acknowledge that this Court granted Zimmer's motion to quash the deposition subpoenas that requested Cline, Saxon, Elliott, and Miller to produce their communications with Zimmer's employees (*see* Docket # 22, 26); therefore, these witnesses did *not* fail to comply with their subpoenas as Barton suggests.  Furthermore, Barton makes absolutely no attempt to identify specifically what information he seeks from the deposed

24

witnesses' e-mails, which involve communications between the witnesses, in-house counsel, and outside counsel preparing for the depositions; thus, he utterly fails to provide any basis for a finding of substantial need.

Finally, Barton contends that substantial need "arises out of [Zimmer's] inexplicable failure to produce the original class evaluation forms completed by class attendees regarding [his] and other Sales Training Mangers['] performance during an actual sales training class conducted in early November, 2005." (Reply Br. 9-10.)  Barton explains that "[t]hese documents are critical to [him] for rebuttal of [Zimmer's] contention that [he] was not a satisfactory performer . . . ." and that the e-mails to and from Zimmer's employees who handled the evaluation forms "are likely the only way for [him] to learn the true fate of the original evaluation forms and whether they really do still exist and should be produced." (Reply Br. 10.)

Again, Barton's argument is unavailing, as Barton has had substantial access to a witness with first-hand knowledge of what likely happened with respect to the requested evaluations.  To explain, Zimmer produced Linda Woodruff, the Senior Coordinator for the Sales Training Department, to testify in its 30(b)(6) deposition regarding the "handling, retention and location of class evaluations including specifically the November 2005 evaluations." (Def.'s Surreply in Opp'n to Pl.'s Mot. to Compel ("Surreply Br.") ¶ 2.)  In fact, Zimmer states that Woodruff was deposed for twenty-five pages on this very issue. (Surreply Br. 2.)  Furthermore, Zimmer also produced an affidavit from Woodruff attesting to the fact that a diligent search was conducted for the November evaluations and that neither she, nor any other Zimmer sales training employee had been able to locate them. (Surreply Br. 2.)  Barton's bald assertion that the requested e-mails will reveal the "true fate" of these evaluations is utterly baseless. (Reply Br. 10.)  Barton has

already been given access to the "substantial equivalent" of the information that he seeks through Woodruff's affidavit and deposition, *see Caremark*, 195 F.R.D. at 614, and thus his final argument is without merit.

## VI.  CONCLUSION

For the reasons set forth herein, the Motion to Compel (Docket # 106) filed by the Plaintiff is GRANTED IN PART in that Defendant is to produce to Plaintiff on or before January 22, 2008, the following documents, which are ultimately neither protected by the attorney-client privilege nor the work-product doctrine:  8445 as redacted, 8446-8447, 6790, 8455-8456, 6791-6792, 7713-7716, 6793-6795, 6797, 6808, 6809, 6810, 6811, 6748-6750, 6752, 6781-6782, 6761-6762, 6763-6767, 6759, 6760, 6768-6770, 8434-8435, 7844, 8461-8462, and 6796.  Plaintiff's Motion to Compel (Docket # 106) is DENIED IN ALL OTHER RESPECTS.

SO ORDERED.

Enter for January 7, 2008.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

26