UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| BRUCE M. BARTON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO.: 1:06-CV-208-TS |
| ZIMMER, INC., | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, Bruce M. Barton, brought suit against his former employer, Zimmer, Inc., pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2654. The Court granted partial summary judgment to the Defendant, which left one claim for a jury to determine: whether the Defendant intentionally discriminated against the Plaintiff in violation of the ADEA. Before trial, the Defendant filed a Motion in Limine seeking to exclude evidence of compensatory and consequential damages, including any evidence that the Defendant caused the disability that has precluded (and continues to preclude) the Plaintiff from working, on grounds that such damages are not recoverable under the ADEA. During the final pretrial conference, the Court approved the joint Final Pretrial Order and entered it as the Court's Final Pretrial Order, and heard argument related to the Defendant's request to preclude the damages evidence. The parties made a joint oral motion to re-open the period in which to file dispositive motions, specifically as it related to the issue of damages. The Court vacated the trial date and set a briefing schedule. This matter is now before the Court on the Defendant's Motion for Summary Judgment on Damages [DE 236], the Plaintiff's Opposition to Defendant's Motion for Summary Judgment on Damages

[DE 239], and the Reply Memorandum in Support of Zimmer, Inc.'s Motion for Summary Judgment on Damages [DE 242].

**BACKGROUND**

The Defendant previously sought summary judgment on the Plaintiff's ADEA claim. In support of its Motion, the Defendant argued that the Plaintiff did not suffer any adverse employment action. In deciding whether the Plaintiff had presented evidence from which a jury could determine that he suffered a materially adverse change in the terms or conditions of his employment, the Court noted that "[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (July 16, 2009, Opinion and Order 29–30, DE 207 (quoting *Crady v. Liberty Nat'l Bank and Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). The Court then discussed the three categories of cases, identified by the Seventh Circuit in *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744–45 (7th Cir. 2002), that have emerged to describe the different types of "discrimination" that can support a Title VII claim.[1] The first category of cases are those in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, such as occurs in a termination of employment. *Id.* at 744. Second are cases in which "a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by

---

[1] Both Title VII and the ADEA prohibit acts of discrimination that impact an employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1).

preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted." *Id.* A variation of this occurs when an employee is not actually transferred, but his job is nonetheless "changed" in a way that "injures his career." *Id.* The harm involved in this scenario is a future financial harm rather than a present harm. *Id.* With the third type of case, the employee is not moved to a different job or the skill requirements of her present job are not altered, "but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment—an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet." *Herrnreiter*, 315 F.3d at 744.

The Court found that there was a triable issue whether the Plaintiff suffered an adverse employment action under the second category of cases described in *Herrnreiter*. The Court determined that, based upon the evidence before it, a jury could reasonably conclude that when the Plaintiff's supervisor, James Richardson, took away his selling duties and failed to replace them with comparable work, he subjected the Plaintiff to future financial harm by preventing him from "using the skills in which he [was] trained and experienced," and injured his career. *Herrnreiter*, 315 F.3d at 744. The summary judgment record also contained evidence of Richardson's discriminatory intent. The Court concluded that the Plaintiff presented sufficient evidence to allow a reasonable jury to find that he suffered an adverse employment action under Richardson's supervision and to infer that the adverse action was the result of intentional age

discrimination.[2]

Despite the issues that remain in this case regarding the impact of the changes in the Plaintiff's duties that were instituted by Richardson, it remains undisputed that none of the employment changes (either during Richardson's tenure or after) reduced the Plaintiff's salary or his benefits. On February 7, 2006, the Plaintiff took a medically necessary leave of absence, which he contends was precipitated by the Defendant placing unreasonable and impossible demands on him that exacerbated his depression, anxiety, and panic disorder. The Plaintiff then extended his leave, and was later declared by the Social Security Administration to be disabled and unable to work as of the date he first took the medically necessary leave of absence. The Plaintiff maintains that he suffers from Major Depressive Disorder, Recurrent, Severe Anxiety Disorder, NOS (Not Otherwise Specified), and displays a full symptom pattern of Post Traumatic Stress Disorder. The Plaintiff began receiving long term disability benefits when his short-term disability ended in August 2006, and accepted an early retirement incentive on November 2, 2006.

## DISCUSSION

In enacting the ADEA, Congress made the following findings:

(1) in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs;
(2) the setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may

---

[2] The Court was careful to note that the supervisor who replaced Richardson did not herself engage in any discrimination, but that the Plaintiff may have realized the impact of the previous supervisor's discrimination through her actions.

    work to the disadvantage of older persons;
    (3) the incidence of unemployment, especially long-term unemployment with
    resultant deterioration of skill, morale, and employer acceptability is, relative to
    the younger ages, high among older workers; their numbers are great and
    growing; and their employment problems grave;
    (4) the existence in industries affecting commerce, of arbitrary discrimination in
    employment because of age, burdens commerce and the free flow of goods in
    commerce.

29 U.S.C. § 621(a). These findings suggest that the ADEA was designed to promote the interests of older workers who had lost jobs or suffered similar disadvantages in their efforts to retain employment. Based on these findings, Congress declared that it was the purpose of the ADEA "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b).

   The remedies under the ADEA are intended to "effectuate the purposes" of the law. 29 U.S.C. § 626(b). Money damages under the ADEA are limited to back pay and liquidated damages (in an amount equal to the pecuniary losses suffered) for willful conduct. *C.I.R. v. Schleier*, 515 U.S. 323, 325 (1995) (recognizing the ADEA's incorporation of the enforcement and remedial mechanisms of the Fair Labor Standards Act of 1938); 29 U.S.C. §§ 216(b) & 626(b).[3] Liquidated damages are intended to compensate an aggrieved party for nonpecuniary

---

[3] The ADEA enforcement provision provides:
The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: Provided, That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling

5

losses arising out of a willful violation of the ADEA that are not easily calculated in terms of back pay and lost fringe benefits. *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684, 687 (7th Cir. 1982) (citing the 1978 report of the Congressional Conference Committee considering amendments to the ADEA). In certain circumstances, the ADEA also provides for equitable relief, such as reinstatement or front pay. *See* 29 U.S.C. § 626(b). The ADEA does not allow recovery of monetary damages for pain and suffering or emotional distress. *C.I.R.*, 515 U.S. at 326 (noting that, in accordance with precedent from every circuit, the parties did not dispute this proposition); *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684, 687–88 (7th Cir. 1982) (holding that "in light of the language of the [ADEA], the statutory context, and the legislative purpose as expressed in the remedial scheme and legislative history, we find, in accord with the overwhelming weight of authority, that punitive damages and damages for pain and suffering are not available under the ADEA"); *see also Cianci v. Pettibone Corp.*, 152 F.3d 723, 728–29 (7th Cir. 1998) (finding that where the plaintiff suffered no loss of income and no costs, the FMLA (which also incorporates the FLSA's remedies) did not offer any form or relief in compensatory or punitive damages).

Accordingly, if the only type of damages a plaintiff seeks relate to emotional distress, or pain and suffering, the claim is without legal remedy under the ADEA. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 773–74 (7th Cir. 2002). In *Franzoni*, the court dismissed an ADEA job elimination claim as moot because the plaintiff would have no right to back pay because his job transfer did not affect his pay and benefits, and reinstatement was not an option because the

---

employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.
29 U.S.C.A. § 626(b).

plaintiff was legitimately terminated from his second position and his previous position no longer existed. *Id.*; *see also Collazo v. Nicholson*, 535 F.3d 41 (1st Cir. 2008) (affirming summary judgment in favor of an employer on the plaintiff's ADEA hostile work environment claim because the plaintiff's claim for compensatory damages for pain and suffering was not recoverable under the ADEA).

Here, the purported act of discrimination, taking away the Plaintiff's job duties as Manager, Performance Improvement and Development, was not accompanied by any change in salary or benefits. Because the theory is that the change nonetheless impacted his career, the Plaintiff's only damages could be for the realization of future financial harm. Although the Plaintiff did stop working and earning his full salary, he did not do so until after he became disabled and no longer able to work for the Defendant (or any other employer). This suggests, at least at first glance, that the Plaintiff is not entitled to back pay or front pay, and thus is not entitled to receive damages under the ADEA. A plaintiff may not collect damages for periods of time in which he otherwise would not have been able to work. *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008). Liquidated damages are only available if there is first an award of back pay, and reinstatement is not an appropriate remedy because the Plaintiff is medically unable to work.

The Plaintiff does not dispute the limited nature of the damages that are available under the ADEA, but argues that his case fits within the ADEA because he is seeking recovery for economic harm. The Plaintiff asserts that, although he was medically unable to work, the disability that caused him to be unable to work was caused by the Defendant's acts of age discrimination. The Plaintiff's position, as stated in the Final Pretrial Order and his Opposition to

7

the Defendant's Motion for Summary Judgment, is that the Defendant's act of taking away his job duties "was the direct and proximate cause of such extreme emotional distress for Barton that Barton became totally disabled from employment and ultimately qualified for Social Security Disability Benefits." (Final Pretrial Order, ¶ D, DE 230; Pl.'s Opposition 5, DE 239.) He maintains that he lost the pay and benefits he anticipated earning through age sixty-five, the age he would have retired absent any discrimination and absent becoming disabled.

The Plaintiff's claim for lost wages does not present the typical factual scenario where an employee has been terminated from his employment, although the Plaintiff makes an attempt to fit his case within that mold. He states that it was made clear to him in a February 15, 2006, letter from his employer that he would not have a job with the Defendant unless he was released to work within the next five business days. This letter does not create a genuine issue of fact whether the Plaintiff was fired because the undisputed facts are that he was on short-term disability leave when he received the letter and remained on leave until August 8, 2006, when he immediately went on long-term disability. He remained on long-term disability until he retired from the Defendant's employment on November 2, 2006. It is not reasonable to conclude from these facts that the Defendant terminated the Plaintiff's employment, but nonetheless allowed him to be on leave and to collect medical disability benefits from the Defendant and then to retire (an act that would not have been possible if he was no longer employed).[4]

---

[4] The Plaintiff has also attempted to analyze the events surround his retirement as a constructive discharge. He contends that he has presented sufficient contentions to allow a jury to determine that the Defendant "actually and/or constructively discharged him on or very soon after February 7, 2006 while Barton was on sick leave that was necessitated by Zimmer's discriminatory adverse action." (Pl.'s Opposition 12.) However, the only acts of age discrimination were those taken by Richardson in 2005. Absent ongoing discrimination, it is highly questionable that realizing the impact of a previous supervisor's discrimination can be the basis of a constructive discharge claim.
"A resignation is not itself a 'discriminatory act' if it is merely the consequence of past

An employer's liability arising from discriminatory conduct ends when the employer has a valid reason for an employment decision. *See McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995) (holding that the ending point for calculating damages was when the employer subsequently acquired evidence of the plaintiff's misconduct). The Plaintiff's representation to the Defendant that he was unable to work provided a valid, non-discriminatory reason for the Defendant to allow the Plaintiff to take leave and to accept his retirement. Therefore, the events occurring after February 7 cannot form the basis of the Plaintiff's claim that he is entitled to lost wages, unless the Defendant is otherwise liable for the event that caused the lost wages. In this case, the event that the Plaintiff alleges caused his lost wages is his mental breakdown and resulting disability. The Court finds that the Plaintiff's argument—that he is entitled to lost wages because he is only unable to work due to a disability that was caused by the

---

> discrimination, but if the employer discriminates against an employee and purposely makes the employee's job conditions so intolerable that a reasonable person would feel forced to resign, then the resignation is a constructive discharge—a distinct discriminatory act for which there is a distinct cause of action." *Young v. National Ctr. for Health Servs. Research*, 828 F.2d 235, 237–38 (4th Cir. 1987) (internal quotation marks omitted).

*Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000). To establish constructive discharge, a plaintiff must show that her working conditions, from an objective standpoint, "became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 133–34 (2004); *see also EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002) (stating that "to demonstrate constructive discharge, the plaintiff must show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable"). The Plaintiff does not attempt to meet the objective, reasonable, employee standard for working conditions that are so severe that they support "involuntary" resignation as the fitting response. However, constructive discharge may also exist when an employer acts in a manner so as to communicate to a reasonable employee that he will be terminated, and the plaintiff resigns instead of waiting around to be fired. *Univ. of Chi. Hosps.*, 276 F.3d at 332. The Plaintiff fares no better under this scenario because, regardless of whether he feared he would no longer have a job if he was released from medical leave, the Plaintiff remained medically unable to work after February 7 and then continued to be on disability leave and to eventually retire because of that disability, not because his "employer made reasonably clear to [him] that [he] had reached the end of the line–where the handwriting was on the wall and the axe was about to fall." *Id.* (quotation marks and brackets omitted).

9

employer's discrimination—presents a theory of recovery that was not anticipated by the drafters of the ADEA. The Plaintiff has plainly alleged that the harm he suffered, although it culminated in economic harm when he was not able to work, was due to "extreme emotional distress." (Final Pretrial Order, ¶ D, DE 230; Pl.'s Opposition 5, DE 239.) This is, in essence, a claim that the employer compensate the Plaintiff for emotional injuries. The Plaintiff couches the damages in terms of economic loss, but the inability to work and the loss of wages was a by-product of the emotional distress.[5] The Defendant had no recourse to lessen its liability for lost wages (which would normally true of a claim for back pay) because any offer to return to work would have been rejected by the Plaintiff due to his medical condition. Making otherwise unrecoverable wages recoverable merely because they can be traced, and relate, to an injury caused by the defendant, would transform such a damage award into compensatory or consequential damages, which are not available under the ADEA. Had the Plaintiff been emotionally distressed and developed a disability that did not prohibit him from working, he would not have been allowed to recover for the damages caused by that emotional distress and resulting disability. Had the scenario occurred in which the employer physically struck the Plaintiff arbitrarily because of his age, the resulting harm would not have been recoverable under the ADEA, even if it caused the employee to lose wages. Rather, any harm resulting from the blow, including any loss of wages, would sound in tort. The same is true of the harm brought about by the work demands that caused the Plaintiff to experience emotional distress.

The Plaintiff cannot dispute that, even if there was a triable issue whether the Defendant

---

[5] In his Opposition brief, the Plaintiff cites *King v. Board of Regent of University of Wisconsin System*, 898 F.2d 533, 540 (7th Cir. 1990), for the proposition that "damages are available for inability to work due to psychological problems resulting from discrimination." (Pl.'s Opposition 8.) *King* is not an ADEA case.

discriminated against the Plaintiff when Richardson took away his significant job duties, the Defendant did not terminate the Plaintiff's employment, reduce his salary, or take away his benefits. Although the Plaintiff claims that he realized a future financial harm when he suffered emotional distress that rendered him disabled and no longer able to work, it is not the kind of economic harm that is contemplated by the ADEA. The lost wages he claims are only consequentially connected to the purported age discrimination. Because the Plaintiff cannot obtain relief under the ADEA, his claim is moot and the Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment on Damages [DE 236] is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on April 30, 2010.

                                            s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT